Filed 8/26/15  Saulie v. Paradise Restaurant & Bar CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| HELEN SAULIE,<br><br>Plaintiff, Cross-Defendant and Appellant,<br><br>v.<br><br>PARADISE RESTAURANT & BAR, INC. et al.,<br><br>Defendants, Cross-Complainants and Respondents. | B252782<br><br>(Los Angeles County<br>Super. Ct. No. BC502860) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph Kalin, Judge.  Affirmed in part, reversed in part, and remanded.

Fink & Steinberg and Olaf J. Muller for Plaintiff, Cross-Defendant and Appellant.

Conforti & Carras and Michael J. Carras for Defendant, Cross-Complainant and Respondent Maria Bizakis.

_____

Following the termination of her employment with Paradise Restaurant & Bar, Inc. (Paradise), appellant Helen Saulie filed a civil action against Paradise and her former manager at Paradise, respondent Maria Bizakis. Saulie alleged in her complaint that Bizakis discriminated against and harassed her on the basis of her age in violation of the Fair Employment and Housing Act (Gov. Code § 12900 et seq.) (FEHA) and caused Paradise to wrongfully discharge her. Bizakis thereafter filed a cross-complaint against Saulie, alleging causes of action for fraud, harassment, defamation, intentional and negligent infliction of emotional distress, and "frivolous lawsuit." In response to the cross-complaint, Saulie brought a special motion to strike pursuant to Code of Civil Procedure section 425.16.[1] The trial court granted the special motion to strike as to the cause of action for "frivolous lawsuit" and as to certain allegations in the cause of action for fraud, but denied the motion in all other respects. Saulie now appeals the trial court's order partially denying her motion. We affirm in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

I.      **Saulie's Complaint Against Paradise and Bizakis**

On March 14, 2013, following the termination of her employment, Saulie filed a FEHA-based civil action against Paradise and Bizakis. The complaint asserted causes of action for age discrimination, age harassment, failure to prevent harassment and discrimination, retaliation, wrongful termination, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and violation of Business and Professions Code section 17200.

Saulie alleges that she was employed by Paradise for 14 years as a waitress and then a manager and was an exemplary employee throughout her tenure. In 2007, Paradise was purchased by Bizakis's adult children, who installed Bizakis as the

---

[1]      Unless otherwise stated, all further statutory references are to the Code of Civil Procedure.

2

restaurant's new general manager notwithstanding her lack of any experience in business or restaurant management. According to the complaint, Bizakis implemented a number of unlawful cost-cutting measures, including refusing to make necessary repairs to the restaurant in violation of health code regulations, ordering staff to re-serve uneaten bread rolls to customers, and forbidding employees from taking restroom breaks. Bizakis also engaged in a campaign of age-based discrimination and harassment against Saulie. Among other acts, Bizakis directed the restaurant hostesses not to seat customers in Saulie's designated section because of her age, reduced Saulie's work hours and reassigned her to the least profitable shifts, and regularly made disparaging remarks about Saulie's age to her customers and coworkers. After Saulie complained to Paradise's owner about the discrimination and harassment, Bizakis retaliated against Saulie by issuing her a series of written reprimands based on false allegations of workplace misconduct. In 2012, Paradise terminated Saulie's employment because of her age and in retaliation for her protected complaints. When health inspectors discovered a rat in the restaurant a few days after Saulie's termination, Bizakis blamed the incident on Saulie, falsely telling staff that Saulie had broken into the restaurant and surreptitiously planted the rat.

## II.  Bizakis's Cross-Complaint Against Saulie

On April 24, 2013, Paradise and Bizakis each filed, in propria persona, a cross-complaint against Saulie.[2]  Bizakis's cross-complaint asserted the following six causes of action:  (1) fraud, (2) harassment, (3) defamation, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, and (6) "frivolous lawsuit."  It also

---

[2]     Because Paradise was a corporate defendant required to be represented by counsel in the underlying action, the trial court set an order to show cause as to whether the cross-complaint filed by Paradise should be stricken.  Paradise thereafter filed a first amended cross-complaint through counsel and Saulie filed a special motion to strike Paradise's first amended cross-complaint.  The trial court has not ruled on that motion, however, and Paradise's first amended cross-complaint is not at issue in this appeal.

included 22 general allegations, which were expressly incorporated by reference into each cause of action in the cross-complaint.

As set forth in the general allegations, Saulie had "a rude, harassing and demeaning attitude towards . . . Bizakis and her family members" during her employment at Paradise. Saulie "did not like the new owner or . . . Bizakis" and "wanted to quit or get fired in order to get unemployment." Saulie "told several co[-]workers, managers and customers" that Bizakis "was inept, was re-using food, [was] ordering workers to serve re-used bread[,] . . . was using improper heating methods for the food[,] . . . was cheap, rude and was allowing the business to falter[,] . . . [and] was not allowing for any repairs or maintenance to keep the restaurant in a sanitary safe condition." Saulie also "spread lies and misinformation" about Bizakis, including "telling customers, co-workers and manage[rs] that . . . Bizakis said she was too old to work at Paradise[,] . . . too inexperienced and lacked the skills to perform her duties." Saulie further "made false complaints to management about . . . Bizakis," and "engaged in a misguided attempt to ruin, harass and intimidate [her]." Saulie "spoke unfavorably about Bizakis to customers and told them Bizakis was wicked and had a vendetta against her."

As further set forth in the general allegations, Saulie engaged in many other acts of workplace misconduct during her employment at Paradise. Saulie "would constantly talk to other employees about her drinking problem[,] . . . [and] would arrive at work every day with a bottle that had the contents hidden[,]" resulting in "several complaints of her smelling like alcohol from the staff and . . . customers." Saulie also "would convert, misappropriate, steal and embezzle funds from Paradise . . . [by] convert[ing] the money directed to food into her own personal tips." Paradise "received numerous complaints about Saulie's service from customers and coworkers," including complaints about "wrong food and drink orders, poor service, poor attitude, [and] long waiting periods." Paradise also warned Saulie about "making inappropriate jokes and sexual comments" to customers and coworkers. On numerous occasions, Saulie "harassed the customers by demanding that they sit in her section," and took "tables, customers and clients away from other servers." Saulie's coworkers "felt harassed, intimidated, and manipulated by

4

her as she attempted to garner sympathy by stating 'Maria doesn't like me' and 'they don't like me,'" which "laid the foundation for her future fraudulent claim of harassment." Saulie "would tell customers and employees that she was protected under age discrimination laws . . . and that she could do whatever she wanted to do." In addition, Saulie "would tell employees and customers that Paradise was going under, that new management was crooked, [and] that the new management was reusing food, did not have proper heating, [and] did not have proper sanitary practices." Saulie "even placed a rat in the building and called the health department anonymously stating she dined in Paradise and [became] 'ill.'"

Paragraph 19 of the cross-complaint alleged that it was Paradise's "understanding and belief that Saulie has intentionally and maliciously taken the actions [and] engaged in the misconduct set forth herein in an effort to harm and interfere with Paradise['s] business, their employees and clients, and to wrongfully attempt to cause [P]aradise to lose such customers and clients." Paragraph 20 further alleged that it was Paradise's "understanding and belief that Saulie has intentionally and maliciously taken the actions and engaged in the misconduct set forth herein in an effort to harm Paradise['s] good name and business reputation and to interfere with Paradise['s] customers and employees so that Paradise would have to incur substantial attorney['s] fees and cost[s] to litigate this matter." Paragraph 21 alleged that Saulie "filed this complaint with no factual basis in order to blackmail, extort, threaten, harass, intimidate and defame Paradise," and that "[t]his action has harmed Paradise financially and has harmed the great reputation the business has."

In addition to incorporating the general allegations, the cause of action for fraud added allegations that Saulie "engaged in repeated lies about . . . Bizakis to employees, customers and health agencies in a pattern of conduct over the months," and that Saulie "filed this litigation with false statements intentionally and knowingly [sic] that the basis for the litigation [was] in fact false and had no merit." The cause of action for "frivolous lawsuit" likewise added allegations that the civil action filed by Saulie is "frivolous" and "fraudulent," and that Saulie and her attorneys "know in fact that the lawsuit is false and

5

has no merit, yet filed it anyway, in order to blackmail, intimidate and harass . . . Bizakis." The remaining causes of action for harassment, defamation, and intentional and negligent infliction of emotional distress incorporated the general allegations as well as the specific allegations supporting the fraud cause of action, but did not allege any other wrongful conduct by Saulie.

### III. Saulie's Special Motion to Strike Bizakis's Cross-Complaint

On May 9, 2013, Saulie filed a special motion to strike Bizakis's cross-complaint pursuant to section 425.16. In her motion, Saulie argued that each cause of action in the cross-complaint arose from constitutionally protected activity because it was based on her conduct in preparing for and filing the underlying lawsuit. Saulie also asserted that Bizakis could not establish a probability of prevailing on the merits of the cross-complaint because each claim was barred by the litigation privilege of Civil Code section 47. Bizakis did not file an opposition to the motion.

On October 2, 2013, the trial court issued an order granting, in part, and denying, in part, Saulie's special motion to strike. The court granted the motion to strike as to the cause of action for "frivolous lawsuit." The court also granted the motion to strike as to certain allegations in the cause of action for fraud. Specifically, the court struck the term "health agencies" from the allegation that Saulie "engaged in repeated lies about Maria Bizakis to employees, customers, and health agencies in a pattern of conduct over the months." The court also struck the allegation that Saulie "filed this litigation with false statements intentionally and knowingly [sic] that the basis for the litigation [was] in fact false and had no merit." The court denied the special motion to strike in all other respects. On November 25, 2013, Saulie filed a timely notice of appeal from the order partially denying her special motion to strike.[3]

---

[3]     In its October 2, 2013 order, the trial court also ruled on a demurrer that Saulie had filed to Bizakis's cross-complaint. The court sustained the demurrer, with leave to amend, as to the causes of action for fraud, harassment, and negligent infliction of emotional distress. The court overruled the demurrer as to the causes of action for

6

**DISCUSSION**

## I.   Standard Of Review

Section 425.16, often referred to as the anti-SLAPP statute,[4] provides, in pertinent part, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)  Section 425.16 must be "construed broadly" to effectuate the statute's purpose, which is to encourage participation in matters of public significance and to ensure that such participation is not chilled through an abuse of the judicial process.  (§ 425.16, subd. (a).)

Resolution of a section 425.16 special motion to strike requires a two-step process. The moving party first must make a threshold showing that the challenged cause of action arises from constitutionally protected activity.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) If the moving party satisfies this prong, then the burden shifts to the opposing party to demonstrate a probability of prevailing on the merits of the claim.  (*Rusheen v. Cohen*, *supra*, at p. 1056; *Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, at p. 67.)[5]  We review the trial court's ruling de novo, conducting an independent review of the entire record.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

---

defamation and intentional infliction of emotional distress.  On October 22, 2013, prior to Saulie's filing of this appeal, Bizakis filed a first amended cross-complaint.

[4]      SLAPP is an acronym for "Strategic Lawsuit Against Public Participation." (*Jarrow Formulas, Inc., v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

[5]      Bizakis filed no opposition to the special motion to strike in the trial court; accordingly, the record contains no showing on the second prong.

## II.    Arising From Constitutionally Protected Activity

A cause of action arises from protected activity within the meaning of section 425.16 if the conduct of the defendant on which the cause of action is based was an act in furtherance of the defendant's right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 ["statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech"]; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 ["critical consideration is whether the cause of action is *based* on the defendant's protected free speech or petitioning activity"].)  Section 425.16, describes four categories of conduct that constitute protected activity:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

When a cause of action contains allegations of both protected and unprotected activity, it is considered a mixed cause of action. In applying section 425.16 to mixed causes of action, "'it is the *principal thrust* or *gravamen* of the . . . cause of action that determines whether the anti-SLAPP statute applies.'" (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1219; see also *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [a party "cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action'"].)  "[W]hen allegations of nonprotected activity are incidental or collateral to a . . . claim challenging primarily the exercise of the rights of free speech or petition, they may be disregarded in determining whether the cause of action arises from protected activity.  Conversely, if the

8

allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion." (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414.) Therefore, a "cause of action is vulnerable to a special motion to strike under the anti-SLAPP statute only if the protected conduct forms a substantial part of the factual basis for the claim." (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1125.)

## III. The Gravamen of the Challenged Cross-Claims Is Not Protected Activity

On appeal, Saulie argues that the trial court erred in partially denying her special motion to strike because she satisfied her threshold burden of showing that each cause of action in Bizakis's cross-complaint arises from constitutionally protected activity. In particular, Saulie asserts that each of the challenged cross-claims is subject to a special motion to strike under section 425.16, subdivisions (e)(1) and (e)(2) because it is based on Saulie's petitioning activity in preparing for and filing her underlying FEHA lawsuit.[6]

California courts "have adopted a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) "[S]tatements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. [Citations.]" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.) In general, "a statement is 'in connection with' litigation under section 425.16 . . . if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266.) Additionally, statements

---

[6] Saulie challenges the trial court's ruling as to five of the six causes of action in Bizakis's cross-complaint: (1) fraud, (2) harassment, (3) defamation, (4) intentional infliction of emotional distress, and (5) negligent infliction of emotional distress. The sixth cause of action for "frivolous lawsuit" was stricken in its entirety by the trial court in ruling on the special motion to strike and is not at issue in this appeal.

made in preparation for or in anticipation of bringing an action that is contemplated in good faith and under serious consideration fall within the ambit of section 425.16. (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 322, fn. 11 ["'"[c]ommunications preparatory or in anticipation of bringing an action or other official proceeding"' are protected by section 425.16"]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 ["'"[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege[,] . . . such statements are equally entitled to the benefits of section 425.16'"].) "Accordingly, although litigation may not have commenced, if a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration"' [citations] then the statement may be petitioning activity protected by section 425.16." (*Neville v. Chudacoff*, *supra*, at p. 1268.)

Saulie contends that the gravamen of Bizakis's cross-complaint impermissibly targets her petitioning activity because it is directly premised on communicative acts taken by Saulie in connection with bringing the underlying lawsuit. In support of this claim, Saulie points to the following general allegations in the cross-complaint, which were incorporated by reference into each cause of action: (1) Saulie "attempted to garner sympathy by stating 'Maria doesn't like me' and 'they don't like me,'" which "laid the foundation for her future fraudulent claim of harassment;" (2) Saulie "has intentionally and maliciously taken the actions and engaged in the misconduct set forth herein in an effort to harm Paradise['s] good name and business reputation and to interfere with Paradise['s] customers and employees so that Paradise would have to incur substantial attorney['s] fees and cost[s] to litigate this matter;" and (3) Saulie "filed this complaint with no factual basis in order to blackmail, extort, threaten, harass, intimidate and defame Paradise." Saulie also points to the following allegation in the fraud cause of action, which likewise was incorporated by reference into the other causes of action alleged:

10

"Saulie filed this litigation with false statements intentionally and knowingly [sic] that the basis for the litigation [was] in fact false and had no merit."**7**

Based on the above-referenced allegations, Saulie argues that each of the five challenged cross-claims is predicated on her actions in filing the underlying FEHA lawsuit because the cross-complaint expressly refers to the lawsuit and the allegations therein as being "false," "fraudulent," and filed with the intent to "harass" and "defame" Paradise. Saulie also asserts that the general theory underlying each cross-claim is that Saulie mistreated Bizakis and engaged in all of the other workplace misconduct alleged in the cross-complaint specifically so that she could sue Paradise and Bizakis once her employment was terminated. According to Saulie, because the cross-complaint alleges that these various acts of misconduct were part of a scheme by Saulie to get fired and then file a FEHA lawsuit, such actions must have been in taken in anticipation of litigation that was contemplated in good faith and under serious consideration. Saulie thus contends that each of the cross-claims is substantially based on her petitioning activity within the protection of section 425.16.

As this court has explained, however, "[w]hen evaluating whether the [moving party] has carried its burden under the first prong of the anti-SLAPP statute, 'courts must be careful to distinguish allegations of conduct on which liability is to be based from allegations of motives for such conduct. "[C]auses of action do not arise from motives; they arise from acts." [Citation.]' [Citation.] '"The court reviews the parties' pleadings,

---

**7**    In her appellate brief, Saulie also relies on the specific allegations in the cause of action for "frivolous lawsuit" to support her argument that all of the other causes of action in the cross-complaint are premised on Saulie's protected activity. Those specific allegations are that Saulie filed a "frivolous" and "fraudulent" lawsuit against Bizakis and that Saulie and her attorneys "know in fact that the lawsuit is false and has no merit, yet filed it anyway, in order to blackmail, intimidate and harass . . . Bizakis." However, the trial court granted Saulie's special motion to strike as to the "frivolous lawsuit" cause of action. Accordingly, those stricken allegations are not relevant to our determination of whether the remaining causes of action at issue in this appeal arise from constitutionally protected activity.

11

declarations and other supporting documents to determine what conduct is actually being challenged, not to determine whether the conduct is actionable." [Citation.]' [Citation.]" (*Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1520.) Moreover, in assessing whether a cause of action arises from protected activity, the court must "'"'"examine the *principal thrust* or *gravamen* of [the] cause of action' . . . by identifying '[t]he allegedly wrongful and injury-producing conduct … that provides the foundation for the claim.' [Citation.] If the core injury-producing conduct upon which the . . . claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. [Citation.]" [Citation.]' [Citation.]" (*Ibid.*)

Here, the principal thrust or gravamen of each challenged cross-claim is that Saulie was an insubordinate employee who engaged in numerous acts of workplace misconduct during her employment at Paradise. As alleged in the cross-complaint, much of Saulie's misconduct was directed at Bizakis and caused Bizakis harm. Specifically, Saulie defrauded, harassed, and defamed Bizakis and caused Bizakis to suffer emotional distress by falsely telling customers, coworkers, and managers at Paradise that Bizakis was incompetent in her job, was failing to properly manage and maintain the restaurant, and was discriminating against Saulie based on her age. In addition, Saulie allegedly engaged in other instances of misconduct that caused Paradise harm. Among other acts, Saulie drank alcohol on the job, harassed customers and coworkers, stole money from the business, and planted a rat in the restaurant for health inspectors to find. As alleged in the cross-complaint, all of these acts of misconduct occurred before Saulie filed her FEHA lawsuit, and with the possible exception of the alleged rat-planting incident, before her employment was terminated. While the cross-complaint does include some allegations that are directed at Saulie's actions in filing the underlying suit, those allegations are collateral to the substance of the challenged claims. The alleged injury-producing conduct that forms the basis of these claims is not Saulie's protected activity in filing or maintaining a lawsuit, but rather her non-protected activity in engaging in work-related misconduct as a Paradise employee.

12

Saulie nevertheless contends that the cross-complaint's allegations of wrongful conduct against Bizakis are directly premised on Saulie's protected activity in filing and serving her FEHA complaint. In particular, Saulie claims that, based on the allegations in the cross-complaint, the specific manner in which she "told" Paradise's customers and employees the purportedly fraudulent, harassing, and defamatory statements about Bizakis was by publicly filing a FEHA complaint that included those statements as factual allegations. This is not a reasonable reading of Bizakis's cross-complaint. Contrary to Saulie's claim, the cross-complaint does not expressly allege that when Saulie made false and injurious statements about Bizakis to customers and employees, she did so by filing a civil complaint. Rather, the cross-complaint alleges that Saulie had a "harassing and demeaning attitude toward . . . Bizakis" from the time new ownership took over Paradise, and that Saulie "told several co[-]workers, managers, and customers" that Bizakis was mismanaging the restaurant and treating Saulie in a discriminatory manner. When the allegations in the cross-complaint are read as a whole and in context, the only reasonable interpretation is that Saulie made these alleged statements to Paradise's customers and employees over a period of time while Saulie was still employed by Paradise and before she had filed the underlying FEHA suit.

We likewise reject Saulie's argument that, based on the allegations in the cross-complaint, her acts of workplace misconduct were committed in anticipation of litigation contemplated in good faith and under serious consideration. There is no indication in the record that, at the time Saulie engaged in any of these alleged acts, including making false complaints to management at Paradise that Bizakis was discriminating against her, Saulie had retained legal counsel, sent a demand letter, filed an administrative complaint, or undertaken any pre-litigation communications with Paradise or Bizakis in connection with an anticipated lawsuit. It is true, as Saulie asserts, that the cross-complaint expressly alleges that one of Saulie's motives for engaging in the misconduct was to "la[y] the foundation" for her future FEHA claims and to cause Paradise "to incur substantial attorney['s] fees and cost[s]" in litigating the underlying lawsuit. However, as discussed, in determining whether a cause of action is based on protected activity under section

13

425.16, the proper focus is on the specific acts giving rise to the cause of action, and not on the motive for those acts. (*Hunter v. CBS Broadcasting Inc.*, *supra*, 221 Cal.App.4th at p. 1520.) Here, the acts giving rise to the challenged cross-claims are Saulie's alleged mistreatment of Bizakis and other acts of workplace misconduct during her employment. Regardless of Saulie's personal motives for engaging in such conduct, her alleged actions in being a poor performing or insubordinate employee do not constitute protected petitioning activity within the scope of section 425.16.

In sum, Saulie failed to satisfy her threshold burden of showing that the challenged causes of action arise from an act in furtherance of the right of petition or free speech. In reaching this conclusion, we express no opinion about the veracity of the allegations in the cross-complaint or the merits of the claims alleged, including whether the conduct on which Bizakis is basing her claims is actionable. (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 493 [courts "do not consider the veracity of respondents' allegations in determining whether their claims arise from protected speech or petitioning activity"]; *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1390 ["[i]f the substance, or gravamen, of the complaint does not challenge the defendant's acts in furtherance of the right of free speech or petition, the court does not consider whether the complaint alleges a cognizable wrong or whether the plaintiff can prove damages"]; *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733 ["[m]erits based arguments have no place in our threshold analysis of whether [challenged] causes of action arise from protected activity"].) We also express no opinion as to whether Bizakis's first amended cross-complaint, which is substantially similar to her original cross-complaint, may be subject to a demurrer or other motion on the pleadings. We simply hold that each of the challenged cross-claims is not subject to a special motion to strike under section 425.16 because Saulie failed to establish that they arise from constitutionally protected activity.

The trial court therefore did not err in denying Saulie's special motion to strike as to the causes of action for harassment, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. The trial court did, however, err in ruling on the cause of action for fraud by striking certain allegations in that cause of

14

action rather than denying the motion to strike as to the entire cause of action. While "[t]he anti-SLAPP statute authorizes the court to strike a cause of action, . . . it cannot be used to strike particular allegations within a cause of action." (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.*, *supra*, 137 Cal.App.4th at p. 1124.)[8] Accordingly, the proper remedy in this matter is to (1) affirm the trial court's order as to the causes of action for harassment, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress, (2) reverse the trial court's order as to the cause of action for fraud, and (3) remand the matter to the trial court to enter a new order denying the motion to strike as to the entirety of the fraud cause of action.

## DISPOSITION

The trial court's order denying Saulie's special motion to strike as to the causes of action for harassment, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress is affirmed. The trial court's order striking certain allegations in the cause of action for fraud is reversed and the matter is remanded to the trial court with directions to enter a new order denying the special motion to strike as to the entirety of the cause of action for fraud. Bizakis shall recover her costs on appeal.

ZELON, Acting P. J.

We concur:

SEGAL, J.                                        STROBEL, J.[*]

---

[8]     Although respondent suggests that the trial court struck the allegations in reliance on the analysis suggested in *Cho v. Chang* (2013) 219 Cal.App.4th 521, there is nothing in the record that supports that suggestion. Accordingly, we need not reach the question of when, if at all, that analysis would be appropriate.

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15